1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. 2:13-cr-00268 LKK AC |
|---|---|
| Plaintiff, | |
| v. | FINDINGS AND RECOMMENDATIONS |
| BRUCE AUSTIN WATKINS, | |
| Defendant. | |

Pursuant to referral from the district judge, ECF No. 36, a restitution hearing was held before the undersigned on July 29 and August 5, 2014. On both occasions Assistant U.S. Attorney Kyle Reardon appeared for the government, and Assistant Federal Defender Douglas Beevers appeared with and on behalf of the defendant, Bruce Austin Watkins. Having considered the evidence submitted with the Presentence Report in support of the victim's restitution request (ECF Nos. 32-4 through 32-9) and the supplemental exhibits provided by the government after the hearing, as well defendant's supplemental memorandum regarding restitution (ECF No. 46) and the arguments of the parties at the hearing, the court makes the following findings of fact and recommendations regarding the calculation of restitution in this matter.

I.   Background

Defendant was charged by indictment with receipt of child pornography (ECF No. 1), and pled guilty on December 3, 2013 (ECF No. 23). The factual basis appended to the plea

agreement states as follows:

> In November 2012, law enforcement identified a computer at the defendant's residence offering files of child pornography through the Ares file-sharing network. Law enforcement successfully downloaded three files from the defendant.
>
> Law enforcement executed a search at the defendant's residence in Lassen County, California on May 6, 2013. Two laptops and one 1TB external hard drive were seized from the residence because they contained child pornography. On the three devices were more than 500 videos and 220 image files. These files were stored in user created folders on the devices, meaning that after downloading them, the defendant saved them in various locations on his computers. These files had been saved on the defendant's computer between January 21, 2007, and April 29, 2013.
>
> Among the files received by the defendant and saved on his computer were the following:
>
> 1. hussyfan – tied-up both girl 9y.avi: this video shows a 5 to 7 year old girl with her legs tied at the ankle and help up over her head; the girls is being vaginally and anally penetrated by an adult male;
>
> 2. ((hussyfan)) (pthc) babyj star.mpg: this video shows several scenes of toddler-aged children being sexually assaulted by adult males;
>
> 3. !!new dark studio 10 cd1 (dad and babyj)(2).mpg: this video shows an approximately three-year-old girl performing oral sex on an adult male;
>
> 4. (pthc_ Vicky 3.mpg: this video shows a prepubescent female performing oral sex on an adult male; and
>
> 5. pthc dad daughter 099.jpg:  this image shows a prepubescent child being sexually assaulted by an adult make.
>
> At the time of the search, the defendant told law enforcement that he had been looking at child pornography online for 15 to 20 years, and that he was aware that he was sharing files through the Ares file-sharing network. The defendant also identified the search terms that he would use to locate files of interest to him. The defendant said that he masturbated to the images he downloaded in order to avoid the urge to have sex throughout the day. The defendant also said that he believed that the children in the videos and images that he downloaded enjoyed having sex.
>
> The defendant spoke with FBI agents on two subsequent occasions. On May 31, 2013, the defendant inquired into when his computer might be returned to him. The defendant said that he was considering purchasing another computer in order to rebuild his collection.

2

> On July 19, 2013, the defendant called the FBI office in Reno, Nevada and again asked about when his computers would be returned. He also said that he would leave his computer running constantly in order to download files of child pornography, that he downloaded "100 times" more files than he could ever view, and that he would choose files to download based upon how many other users had downloaded them, assuming these to be the most popular, and therefore best files. He said he had seen images of children in diapers, but that he was not sexually aroused by them. He also described one video that he viewed often involving a bound eight-year old girl being sexually abused. He also described a video involving a bound 10-year-old girl engaged in sexually explicit conduct, as well as a video of a 12-year-old girl engaged in bestiality.

A sentencing hearing was held before the Honorable Lawrence K. Karlton on May 28, 2014. Defendant was sentenced to a term of 90 months imprisonment to be followed by 120 months of supervised release. A fine was waived, and the matter of restitution was referred to the undersigned.

The pornography involved in this case involves a number of unidentified child victims and one identified victim. The victim known as "Vicky" seeks restitution here in the amount of $150,000.00. See ECF No. 32-3. Vicky was raped and sexually exploited by her father at the ages of 9 and 10. Images and video recordings were made of the abuse, which included bondage and vaginal and anal penetration. The resulting pornography, known as the "Vicky series," has been distributed worldwide and is the subject of recurring restitution litigation in the federal courts. Vicky's legal representative has submitted extensive documentation of Vicky's injuries and resulting psychological treatment needs, educational and vocational losses, lost earnings, costs and attorney's fees. ECF Nos. 32-4 through 32-9; Gov't Ex. A, B.

The plea agreement in this case includes a waiver of defendant's right to appeal the restitution amount so long as restitution does not exceed $5,000.00. ECF No. 25 at 10.

On April 23, 2014, the United States Supreme Court decided Paroline v. United States, 134 S.Ct. 1710 (2014), which held that restitution in child pornography cases is limited to the losses proximately caused by the individual defendant. The lower courts have only just begun applying Paroline. One of the earliest cases to do so in a written opinion is United States v. Hernandez, No. 2:11-cr-0026 GEB, 2014 U.S. Dist. LEXIS 89688 (July 1, 2014), which also

involved restitution to Vicky. At the initial hearing on the present matter, the undersigned solicited the positions of the parties on the Hernandez approach to the calculation of restitution. At that time (July 29), the parties believed that they might reach agreement on the restitution amount, and sought a week's continuance to pursue negotiations and seek the victim's agreement to any settlement. Although no agreement was reached, the positions of the government and the defense are not far apart.

The government endorses the Hernandez approach, which divides the victim's total losses by the number of extant restitution orders in cases involving Vicky. The government relies on the evidence povided by Vicky's representative to establish total losses of $1,043,269.17 (the same amount found by Judge Burrell in Hernandez[1]), and represents that the total universe of restitution orders now numbers 476. The defense stipulated that these numbers are accurate. The government accordingly seeks restitution in the amount of $2191.74. Counsel for the government represented that the victim would have accepted a negotiated restitution amount of $2200.00. Agreement with the defense was not reached, however, and the victim has not abandoned her original request for restitution in the amount of $150,000.00.

The defendant urges the court to divide the total losses not by the number of existing restitution orders, but by a larger number that includes future restitution orders. See ECF No. 46.

II.   Legal Standard

"Enacted as a component of the Violence Against Women Act of 1994, [18 U.S.C.] § 2259 requires district courts to award restitution for certain federal criminal offenses, including [the receipt of] child-pornography . . . ." Paroline v. United States, 134 S. Ct. 1710, 1716 (2014).

> Section 2259 requires district courts to order defendants "to pay the victim . . . the full amount of the victim's losses as determined by the court," § 2259(b)(1), and expressly states that "[t]he issuance of a restitution order under this section is mandatory," § 2259(b)(4)(A).

Id. at 1718-19.

////

---

[1] No. 2:11-cr-0026 GEB, ECF No. 81 at 20.

4

The statute defines the phrase "full amount of the victim's losses" to include:

> any costs incurred by the victim for —
>
> (A)  medical services relating to physical, psychiatric, or psychological care;
>
> (B)  physical and occupational therapy or rehabilitation;
>
> (C)  necessary transportation, temporary housing, and child care expenses;
>
> (D)  lost income;
>
> (E)  attorneys' fees, as well as other costs incurred; and
>
> (F)  any other losses suffered by the victim as a proximate result of the offense.

Section 2259(b)(3).

The Supreme Court held in Paroline that § 2259(b)(3)(F)'s "proximate-cause requirement applies to all the losses described in § 2259." Paroline, 134 S. Ct. at 1722. "Restitution is therefore proper under § 2259 only to the extent the defendant's offense proximately caused a victim's losses." Id. However,

> . . . where it can be shown both that a defendant possessed a victim's images and that a victim has outstanding losses caused by the continuing traffic in those images but where it is impossible to trace a particular amount of those losses to the individual defendant by recourse to a more traditional causal inquiry, a court applying § 2259 should order restitution in an amount that comports with the defendant's relative role in the causal process that underlies the victim's general losses.

Id. at 1727.

"There are a variety of factors district courts m[ay] consider in determining a proper amount of restitution . . . ." Id. at 1728. "[A]s a starting point, [district courts may] determine the amount of the victim's losses caused by the continuing traffic in the victim's images . . . , then set an award of restitution in consideration of factors that bear on the relative causal significance of the defendant's conduct in producing those losses." Id.

> These could include the number of past criminal defendants found to have contributed to the victim's general losses; reasonable predictions of the number of future offenders likely to be caught

5

>and convicted for crimes contributing to the victim's general losses; any available and reasonably reliable estimate of the broader number of offenders involved (most of whom will, of course, never be caught or convicted); whether the defendant reproduced or distributed images of the victim; whether the defendant had any connection to the initial production of the images; how many images of the victim the defendant possessed; and other facts relevant to the defendant's relative causal role.

Id. "These factors . . . should . . . serve as rough guideposts for determining an amount [of restitution] that fits the offense." Id.

The government bears the burden of proving the amount of a victim's losses by a preponderance of the evidence. See id. at 1729 citing 18 U.S.C. § 3664(e); United States v. Kennedy, 643 F.3d 1251, 1263 (9th Cir. 2011) ("[T]he government must prove by a preponderance of the evidence that [the defendant's] offenses proximately caused the losses incurred by [the victims]."). "[A] restitutionary award under § 2259 will be improper if the district court must engage in arbitrary calculations to determine the amount of [a] victim's losses." Kennedy, 643 F.3d at 1261 (citation omitted).

### III. Findings Of Fact

The undersigned finds that the following facts have been proven by a preponderance of the evidence (or established by stipulation as noted):

1. Defendant Bruce Austin Watkins received images of Vicky. This predicate fact is undisputed by the defense. The stipulated factual basis for defendant's plea includes receipt of specified files including a Vicky video ((pthc_ Vicky 3.mpg). The file names specified in the factual basis represent only five of the hundreds of files found on defendant's computers. The government did not present evidence of how many Vicky images and videos defendant received.

2. Vicky has outstanding losses caused by the continuing traffic in her images. This fact is also undisputed by the defense.

3. Vicky suffers from psychological injuries including post-traumatic stress disorder and anxiety as the result of the sexual abuse that was documented in the "Vicky" series. These psychological injuries have been and continue to be aggravated, and

6

significant and ongoing additional injury is caused, by the continued distribution and online viewing of her abuse.  See ECF No. 32-4 at 20-78 (psychological status reports of Randall Green, Ph.D.)  The court accepts the opinion of Dr. Green, based on multiple evaluations of Vicky, that "[Vicky] has suffered significant, permanent psychological damage as a direct result of the knowledge that images of her victimization, humiliation and exploitation have been downloaded and viewed by numerous individuals.  She will continue to suffer from the knowledge and belief that those images of her childhood abuse are at high probability to continue to be downloaded for prurient purposes."  ECF No. 32-4 at 29.  See also ECF No. 32-4 at 3-10 (victim impact statements); ECF No. 32-4 at 12-18 (statements of victim's mother and step-father).

4. Vicky continues to require individual psychotherapy for reasons both directly and indirectly resulting from knowledge of the continued downloading and dissemination of her images.  She is expected to require mental health treatment for the foreseeable future.  See ECF No. 32-4 at 25-27.

5. According to Dr. Green's most recent report, dated April 11, 2014, Vicky's psychological counseling costs can reasonably be expected to total $108,975.00 to $113,600.00.  Gov't Ex. A, p. 18.  These figures are not disputed.

6. Vicky's psychological injuries, and the knowledge that images of her abuse continue to be disseminated, have negatively affected her education, career development, vocational prospects, and earning capacity.

7. Vicky's educational and vocational losses, which are established by the expert opinion of vocational consultant, Merrill Cohen (ECF No. 32-4 at 142-150), include:

   - An additional semester of college and two additional semesters of graduate school ($34,580.00);
   - lost part-time wages while attending school because of her inability to both

1         attend school full-time and hold a part-time job ($15,000.00);[2] and

2        -  educational and career counseling ($3,750.00).

3         These amounts are not disputed.

4    8. Vicky's lost earnings attributable to injuries from the pornography total

5       $828,150.00. This figure is supported by the expert opinion of economist Stan V.

6       Smith, Ph.D. Gov't Ex. B, p. 5; see also ECF No. 32-5 at 4-41 (previous report).

7       Dr. Smith has calculated the loss of earnings attendant to Vicky's delay in entry

8       into the work force and the predicted recurrent interruption in her work life caused

9       by the need for therapy and periodic triggering of her panic and anxiety over the

10      presence of her images on the internet. The amount of Vicky's lost earnings is not

11      disputed.

12   9. Vicky's costs expended in seeking restitution for her injuries total $82,236.43 as of

13      April 10, 2014. ECF NO. 32-3 at 3, No. 32-8 at 12-17. This amount includes

14      costs incurred prior to defendant's offense conduct and expenses related to other

15      litigation. The costs that neither predate defendant's offense conduct nor are

16      attributable to other litigation total $50,501.67. This amount is not disputed.

17  10. Counsel began representing Vicky in restitution proceedings in the fall of 2008.

18      Counsel spent 580.4 hours in direct representation of Vicky through September 30,

19      2010, and at least 270.5 additional hours through January 31, 2012. This figure

20      does not include paralegal or staff time. Counsel's hourly rate is $350.00. ECF

21      No. 34-8 at 8-9.

22  11. The losses specified above were proximately caused by the individuals, including

23      defendant Watkins, who have received images and videos of Vicky's abuse.

24  12. As of August 5, 2014, 476 restitutions orders have issued directing payment of

25      restitution to Vicky. This figure, which is undisputed, represents an increase of 19

26      restitution orders since Hernandez.

---

[2] The court excludes as duplicative those lost wages that are included in the lost earnings calculated separately by economist Stan Smith.

8

13. The number of prior restitution orders, and the increase in that number over a period of less than five weeks, support an inference that additional restitution orders for Vicky will continue to result from ongoing child pornography prosecutions.

14. It is not possible on the record before the court to reliably predict or estimate the number of future offenders or restitution orders.

IV.     Discussion: Calculation of Restitution Award

It is undisputed that defendant received images of Vicky and that Vicky has outstanding losses caused by the continuing traffic in her images.  The defense does not dispute that defendant's offense conduct therefore constitutes a proximate cause of Vicky's losses. Accordingly, the court must determine a restitutionary amount that "comports with the defendant's relative role in the causal process that underlies [her] general losses." Paroline, 134 S.Ct. at 1727.

A.  Victim's Losses

The first step is calculation of Vicky's general losses.  The undersigned has found based on the opinion of Dr. Green that Vicky's past and future psychological treatment will cost between $108, 975.00 and $113,600.00.  Vicky requests an apportioned value of $113,600.00, the highest value of Dr. Green's estimated range.  The factors which may influence actual treatment costs within this range are impossible to predict.  Accordingly, like Judge Burrell in Hernandez,[3] the undersigned concludes that it is appropriate to use the average amount of the estimated range, or $111,287.50.

It is appropriate to include the full amount of Vicky's educational and vocational losses ($53,330.00) and her lost earnings ($828,150.00) in the total losses.

Vicky seeks an apportioned value of her total costs related to the pursuit of restitution. The undersigned has found that the costs submitted on Vicky's behalf include costs that were incurred prior to defendant's offense conduct and expenses related to other litigation.  Losses that

---

[3] See No. 2:11-cr-0026 GEB, ECF No. 81 at 17-18.

9

are traceable to specific defendants are not properly included in general losses to be apportioned. The <u>Paroline</u> approach is designed for the determination of a restitutionary amount where it is "impossible to trace a particular amount of [the victim's] losses to the individual defendant." <u>Paroline</u>, 134 S.Ct. at 1727. Losses clearly traceable to individual defendants, and therefore to be excluded from apportionment, include case-specific litigation costs. <u>United States v. Gamble</u>, 709 F.3d 541, 554 (6th Cir. 2013). Accordingly, only costs that postdate defendant's conduct and those that are impossible to trace to any particular defendant (such as the costs of expert evaluations and obtaining medical and school records, which are necessary to all restitution requests made on Vicky's behalf), should be included. As in the relatively contemporaneous <u>Hernandez</u> case,[4] this amount is $50,501.67. The parties agree that this amount is appropriate.

Finally, Vicky requests $2,500.00 in attorney's fees. This request is not supported by evidence concerning the amount of attorney time spent in this case. Rather, the declaration of Vicky's counsel describes her efforts representing Vicky in all restitution-related matters since the fall of 2008, and provides the total number of hours spent representing Vicky generally through January 31, 2012 – prior to the indictment of this defendant. <u>See</u> ECF No. 32-8 at 8-9. Because attorney's fees (unlike the psychological injuries Vicky has suffered and the economic consequences of those injuries) are traceable to particular cases involving specific defendants, they should not be included in general losses to be apportioned. <u>See</u> <u>Paroline</u>, 134 S.Ct. at 1727. Because there is no evidence before the court to support a finding regarding attorney's fees specific to this case, they should be excluded as they were in <u>Hernandez</u>.[5]

Accordingly, the total amount of Vicky's losses is $1,043,269.17 ($111,287.50 for psychological treatment, $53,330.00 for educational and vocational losses, $828,150.00 in lost earnings and $50,501.67 in costs).

B. <u>Defendant's Relative Role In Causing Losses</u>

The second step is to determine "defendant's relative role in the causal process that underlies the victim's general losses." <u>Paroline</u>, 134 S.Ct. at 1727. The government contends

---

[4] No. 2:11-cr-0026 GEB, ECF No. 81 at 19-20.
[5] <u>See</u> No. 2:11-cr-0026 GEB, ECF No. 81 at 20.

1  that Vicky's losses should be divided by the number of previous Vicky restitution orders, as in

2  Hernandez.  See No. 2:11-cr-0026 GEB, ECF No. 81 at 20.  This approach has been widely

3  adopted.  As one court has explained:

> In a situation involving a victim whose images have been widely disseminated and viewed over the Internet, the court may allocate losses by dividing the pool by the number of defendants convicted of possessing the victim's image. In a situation such as Vicky's. . . the number of convicted possessors is a reasonable divisor.  It takes into account the fact that many individuals have contributed to Vicky's harms and puts the cost of treating those harms on this culpable and identifiable population. At the same time, it results in a restitution award that is meaningful and takes into account Congress's desire to provide compensation to victims while also assigning some value to the social harm.

10  Gamble, 709 F.3d at 554.

11      Use of the number of known possessors (as measured by prior restitution orders) as a

12  divisor satisfies Paroline's requirement that the restitution amount reasonably reflect the role of

13  this defendant among other offenders in causing the identified losses.  The defendant argues that

14  the divisor should be expanded to include a reasonable prediction of the number of future

15  offenders.  The Paroline Court did note that the number of anticipated future offenders was one of

16  many factors that "could" be considered in determining the relative causal significance of the

17  defendant's conduct in producing the victim's losses.  Paroline, 134 S.Ct. at 1728.  Consideration

18  of future offenders is not required, however.  See id.

19      There is no evidence before the court to support a reasonable prediction of the number of

20  future offenders.  The defense asks the court to double the prior restitution order figure as an

21  estimate of those collectively responsible for the victim's losses, ECF No. 46 at 3, but doing so

22  would be impermissibly arbitrary.  See Kennedy, 643 F.3d at 1261 (forbidding arbitrary

23  calculations in restitution determination).  Moreover, doubling the known universe of offenders

24  would result in a restitution amount that nears triviality, especially in light of the victim's injuries.

25  Trivial restitution amounts are also impermissible.  Paroline, 134 S.Ct. at 1728.

26      For these reasons, the undersigned recommends dividing Vicky's total losses of

27  $1,043,269.17 by 476, the number of restitutions orders that have issued directing payment of

28  ////

restitution to Vicky as of the restitution hearing in this case.  The resulting restitution amount is $2191.74.

## CONCLUSION

For the reasons explained above, it is RECOMMENDED that Vicky be awarded $2191.74 in restitution.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Pursuant to the stipulation of the parties in open court, written objections may be filed and served within five days after service of these findings and recommendations.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: August 12, 2014

_____
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE